UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUE KEMBERLING,
JOHN CIAMBRONE, and
EDWARD KAUPLA as
CO-TRUSTEES OF THE KEMCO
CHARITABLE TRUST DATED
FEBRUARY 2, 1998,

    Plaintiffs,

vs.

METLIFE LIFE AND ANNUITY
COMPANY OF CONNECTICUT,

    Defendant.
_____/

CASE NO.: 8:06-CV-01741-T-23MAP

**DEFENDANT, METLIFE LIFE AND ANNUITY COMPANY OF CONNECTICUT'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

**COMES NOW** Defendant, METLIFE LIFE AND ANNUITY COMPANY OF CONNECTICUT, by and through its undersigned counsel, and hereby answers the Complaint of Plaintiffs, and, as to each and every allegation therein, states as follows:

**ANSWER TO COMPLAINT OF PLAINTIFFS**

1. Admitted that Plaintiffs, through the Complaint, seek damages in relation to a claim for breach of contract. Admitted that Plaintiffs have made a claim for the death benefit of Flexible Premium Adjustable Life Insurance Policy Number 7457524 ("Policy"), which was issued by The Travelers Life and Annuity Company n/k/a MetLife Life and Annuity Company of Connecticut ("MetLife"). Admitted that the Policy provided life insurance coverage to Lee Kemberling ("Insured"), now deceased. Admitted that MetLife has denied Plaintiffs' claim for the Policy's death

benefit.  Denied that Plaintiffs are entitled to any relief whatsoever against MetLife.  Denied as to all other matters not expressly admitted herein.

2. Admitted, upon information and belief, that Sue Kemberling is a citizen of the State of Florida and is a co-trustee of the Kemco Charitable Trust Dated February 2, 1998 ("Trust").  Denied as to all other matters not expressly admitted herein.

3. Admitted, upon information and belief, that John Ciambrone is a citizen of the State of Arkansas and is a co-trustee of the Trust.  Denied as to all other matters not expressly admitted herein.

4. Admitted, upon information and belief, that Edward Kaupla is a citizen of the State of Wisconsin and is a co-trustee of the Trust.  Denied as to all other matters not expressly admitted herein.

5. Admitted.

6. Admitted that this Court has personal jurisdiction over MetLife in this action.  Admitted that MetLife engages in business in the State of Florida.  Admitted that MetLife has entered into contracts with individuals in the State of Florida.  Denied that MetLife has breached the terms of the Policy.  Denied as to all other matters not expressly admitted herein.

7. Admitted that this Court has subject-matter jurisdiction over this action.

8. Admitted that venue for this action is proper in the Middle District of Florida.  Admitted that the Insured was a resident of Pinellas County, Florida at the time the Policy was issued.  Denied that the application for the Policy was completed in Pinellas County, Florida.  Denied that the agent who sold the Policy was located in Pinellas County, Florida.  Admitted that the Insured's medical examination, conducted as part of the application process for the Policy,

occurred in Pinellas County, Florida. Admitted that the Insured died in Pinellas County, Florida. Admitted that MetLife, by letter to Edward Kaupla dated July 6, 2006, denied coverage under the Policy. Denied as to all other matters not expressly admitted herein.

9. Admitted that on March 10, 2005, Edward Kaupla, with the consent of the Insured, applied for life insurance coverage under the Policy. Admitted that the application for the Policy sought life insurance coverage in the amount of $10,000,000.00. The Complaint's use of the term "medically underwritten" is vague and ambiguous and, therefore, the last sentence of this paragraph is denied. Denied as to all other matters not expressly admitted herein.

10. Admitted that the Policy was issued on April 25, 2005, and had a face amount of $10,000,000.00. Denied as to all other matters not expressly admitted herein.

11. Admitted.

12. Admitted that the Insured's death certificate states that he died on November 30, 2005.

13. Admitted that a January 10, 2006 claim form was executed by Edward Kaupla, on behalf of the Trust, and submitted to MetLife. Denied as to all other matters not expressly admitted herein.

14. Denied.

15. Admitted that MetLife, by letter dated July 6, 2006, denied Plaintiffs' claim for the Policy's death benefit. Denied as to all other matters not expressly admitted herein.

16. Denied.

17. MetLife is without sufficient information to admit or deny the allegations within this paragraph.

18. Admitted.

19. Denied.

20. Plaintiffs, within this paragraph of the Complaint, do not assert a factual allegation, but simply request a jury trial. Accordingly, no response to this paragraph is required from MetLife.

## AFFIRMATIVE DEFENSES

1. MetLife affirmatively states that the Insured made negligent and/or intentional misrepresentations during the application process, or otherwise failed to provide information during the application process to the best of his knowledge and belief, in light of the facts then known to him. These misrepresentations during the application process were material to the issue of whether the Insured would receive insurance coverage from MetLife, and how much insurance coverage would be issued by MetLife. MetLife reasonably relied upon these misrepresentations in issuing insurance coverage to the Insured. Had the Insured responded truthfully and accurately within the policy application, MetLife would not have issued the Policy to him, or would have issued coverage under the Policy subject to different terms, limitations, and premiums. Accordingly, the Policy is void *ab initio*.

## COUNTERCLAIM

COMES NOW Defendant/Counter-Claimant, METLIFE LIFE AND ANNUITY COMPANY OF CONNECTICUT ("MetLife"), by and through its undersigned counsel, and hereby files this Counterclaim against Plaintiffs, SUE KEMBERLING, JOHN CIAMBRONE, and EDWARD KAUPLA, as CO-TRUSTEES OF THE KEMCO CHARITABLE TRUST DATED FEBRUARY 2, 1998 ("Trust"), stating as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for rescission of, or alternatively for declaratory judgment relating to, Flexible Premium Adjustable Life Insurance Policy Number 7457524 ("Policy"), which was issued by MetLife and provided life insurance coverage to Lee Kemberling ("Insured").

2. The Policy had a face amount of $10,000,000.00.

3. MetLife is a foreign insurance company, organized and existing under the laws of the State of Connecticut and is authorized to do business in the State of Florida. MetLife is neither incorporated in the State of Florida, nor does it have its principal place of business in the State of Florida.

4. Upon information and belief, Sue Kemberling is a citizen of the State of Florida.

5. Upon information and belief, John Ciambrone is a citizen of the State of Arkansas.

6. Upon information and belief, Edward Kaupla is a citizen of the State of Wisconsin.

7. Jurisdiction and venue are proper herein because this Court has diversity jurisdiction over the action filed by Plaintiff, for the reasons alleged within the Complaint, and the facts alleged in support of MetLife's Counterclaim arise out of the transaction that is the subject matter of the Complaint, thus providing this Court with supplemental jurisdiction.

## GENERAL ALLEGATIONS

8. On March 10, 2005, the Insured and Edward Kaupla, acting as trustee of the Trust, met with agent Wayne Weaver for the purpose of obtaining life insurance coverage from MetLife for the Insured. As part of the application process for insurance coverage, the Insured and Edward Kapula executed a document entitled "Part One Application for Life Insurance" ("Application"). A copy of the Application is attached hereto as Exhibit "A."

9. Question 8 of the Application stated as follows: "List all life insurance policies or annuity contracts now in effect on any Proposed Insured. If "None", so state. If any life insurance or annuity in this Company or any other company will be replaced, discontinued, reduced or changed if insurance now applied for is issued, so indicate and provide the policy number."

10. In response to Question 8 of the Application, the following insurance companies, dates of issue, and face amounts were listed: (a) "Gen Am", 2001, $27 million; (b) "Hartford", 1980, $2 million; (c) "Lincoln", 1999, $3.2 million; and (d) "Tran Am.", 1999, $1.5 million.

11. Question 4a of the "Medical History" section of the Application asked the following: "Has the Proposed Insured ever had any disorder of (circle all that apply): Skin, Neck, Back, Spine, Bones, Joints, Eyes, Ears, Thyroid, Heart, Cerebrovascular System, Lungs, Breasts, Gastrointestinal System, Liver, Kidney, Genitourinary System, Immune System, Nervous System, Blood, Lymph Nodes, Blood Vessels."

12. In response to Question 4a of the "Medical History" section of the Application, the "No" box was marked.

13. Question 6a of the "Medical History" section of the Application asked the following: "Other than the above, has any Proposed Insured ever had any mental or physical disorder or illness, injury, surgery, or been a patient in a hospital or other medical facility?"

14. In response to Question 6a of the "Medical History" section of the Application, the "Yes" box was checked.

15. In the Application space provided for explanation of answers, it was disclosed that the Insured had experienced hypertension and had undergone cataract surgery. No other medical conditions were disclosed with the Application.

16. At the conclusion of the Application, both the Insured and Edward Kaupla executed the "Signature Section" of the Application, which stated, in relevant part, as follows:

> **DECLARATION**: APPLICANT declares to the best of his/her knowledge and belief that all of the statements and answers in Part One and Part Two, if required, are complete and true. APPLICANT UNDERSTANDS AND AGREES THAT: (a) Part One and Part Two, if required, and any supplements will form the basis for any insurance issued; (b) Except as stated in the attached Temporary Insurance Agreement: (1) No insurance will take effect prior to the later of the Issue Date or the Policy Date shown on the Policy Summary; (2) Any insurance issued will take effect on the later of the Issue Date or the Policy Date shown on the Policy Summary if, on the later of the Issue Date or the Policy Date, the health and other conditions relating to insurability remain complete and true as described in this application; and (c) No agent is authorized: (1) to make, alter or discharge any contract; (2) to waive or change any condition or provision of any contract, application, or receipt; or (3) to accept any risk or make any decision concerning insurability.

17. As part of the application process, the Insured and Edward Kaupla also executed a document entitled "Life Financial Supplement," dated March 10, 2005. A copy of the "Life Financial Supplement" is attached hereto as Exhibit "B."

18. Within the "Life Financial Supplement," Question 1 asked for a list of other in-force life insurance.

19. The answer provided in response to Question 1 of the Life Financial Supplement was $32,000,000 for personal life insurance coverage.

20. At the conclusion of the Life Financial Supplement, both the Insured and Edward Kaupla executed the following attestation:

> I understand that Travelers Life & Annuity will rely on the above statements in determining the need and justification for the insurance applied for, and I represent that the information in this supplement is true and complete to the best of my knowledge and belief as of the date of application. A photocopy of this statement is as valid as the original.

21. In reliance upon the representations made by the Insured and Edward Kaupla during

7

the application process, MetLife issued the Policy on April 25, 2005, with a face amount of $10,000,000. A copy of the Policy is attached hereto as Exhibit "C."

22. At the time of issuance of the Policy, the named primary beneficiary under the Policy was the Trust.

23. The Insured died on November 30, 2005. A copy of the Insured's death certificate is attached hereto as Exhibit "D."

24. Thereafter, MetLife received a Statement of Claim form, dated January 10, 2006, from Edward Kaupla, seeking payment of the Policy's death benefit on behalf of the Trust. A copy of the Statement of Claim form is attached hereto as Exhibit "E."

25. Because the Insured died prior to the effective date of the Policy's two-year Incontestability Clause, MetLife conducted an investigation into the circumstances surrounding the Insured's death and the issuance of the Policy.

26. Pursuant to MetLife's investigation, it was determined that the Insured misrepresented within the Application the amount of insurance coverage in effect on his life.

27. Moreover, MetLife's investigation revealed that the Insured was found, prior to issuance of the Policy, to have significant blockage in his carotid artery.

28. In light of these findings, MetLife declined coverage under the Policy.

29. MetLife has refunded all premiums, plus interest, paid under the Policy.

## CAUSES OF ACTION

### COUNT ONE: RESCISSION PURSUANT TO §627.409, FLA.STAT.

The allegations of paragraphs 1 through 29, set forth above, are incorporated herein by reference as if restated in their entirety.

30. The information provided within the Application and Life Financial Supplement misrepresents the amount of insurance coverage the Insured had in effect on his life, as set forth in paragraphs 9-10, 16-20, and 26, above.

31. These misrepresentations were made negligently and/or intentionally, or occurred because the Insured and/or Edward Kaupla failed to answer the questions of the Application and the Life Financial Supplement to the best of their knowledge and belief.

32. These misrepresentations were made for the purpose of inducing MetLife to issue the Policy.

33. These misrepresentations were material to the acceptance of the risk or to the hazard assumed by MetLife in issuing the Policy.

34. MetLife reasonably relied upon these misrepresentations and issued coverage to the Insured based on such reasonable reliance.

35. Had MetLife known the true facts relating to the Insured's insurance coverage, MetLife would not have issued life insurance coverage to the Insured, or would have issued coverage subject to different terms, limitations, and premiums.

WHEREFORE, MetLife respectfully requests that this Honorable Court enter a judgment or order rescinding the Policy between the Insured and MetLife, retroactive to the date of the Policy's issuance, April 25, 2005, thus effectively rendering the Policy *void ab initio* and relieving MetLife of any duty to make payment under the Policy to any party. MetLife further requests entry of a judgment for costs and any and such further relief as this Court may find equitable.

COUNT TWO: RESCISSION FOR FRAUDULENT MISREPRESENTATION

The allegations of paragraphs 1 through 29, set forth above, are incorporated herein by

reference as if restated in their entirety.

36. The information provided within the Application and Life Financial Supplement misrepresents the amount of insurance coverage the Insured had in effect on his life, as set forth in paragraphs 9-10, 16-20, and 26, above.

37. These misrepresentations, omissions, concealment of facts and/or incorrect statements were made intentionally for the purpose of inducing MetLife to issue life insurance coverage to the Insured.

38. These misrepresentations, omissions, concealment of facts and/or incorrect statements were material to the issue of whether, and in what amount, the Insured would receive insurance coverage from MetLife.

39. MetLife reasonably relied upon these misrepresentations, omissions, concealment of facts and/or incorrect statements, delineated herein, and issued coverage to the Insured based on such reasonable reliance.

40. Had MetLife known the true facts of the Insured's life insurance coverage, MetLife would not have issued the Policy to the Insured, or would have issued coverage subject to different terms, limitations, and premiums.

41. Based upon these misrepresentations during the application process, the Policy is *void ab initio.*

WHEREFORE, MetLife respectfully requests that this Honorable Court enter a judgment or order rescinding the Policy between the Insured and MetLife, retroactive to the date of the Policy's issuance, April 25, 2005, thus effectively rendering the Policy *void ab initio* and relieving MetLife of any duty to make payment under the Policy to any party. MetLife further requests entry of a

judgment for costs and any and such further relief as this Court may find equitable.

## COUNT THREE - POLICY WAS NEVER IN EFFECT

The allegations of paragraphs 1 through 29, set forth above, are incorporated herein by reference as if restated in their entirety.

42. The Application provides, *inter alia*, that coverage under the Policy will go into effect only if the representations in the Application relating to health and other conditions for insurability remain complete and true up to the later of the date of issuance or the policy date.

43. Prior to issuance of the Policy, the Insured was determined to have significant blockage in his carotid artery.

44. The presence of this condition is contrary to the representations made in the Application relating to the Insured's health.

45. Coverage under the Policy, therefore, never took effect and MetLife has no obligation under the Policy.

46. Whether there is coverage under the Policy is an issue of actual controversy between the parties, who have adverse legal interests, and is an issue susceptible to the Court's determination.

WHEREFORE, MetLife respectfully requests that this Honorable Court enter a judgment or order declaring that the Policy between the Insured and MetLife was never in effect, thus relieving MetLife of any duty to make payment under the Policy to any party. MetLife further requests entry of a judgment for costs and any and such further relief as this Court may find equitable.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 27, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a copy to: **JASON S. OLETSKY, ESQ.,** Kluger, Perez, Kaplan & Berlin, P.L., Miami Center, 17th Floor, 201 S.

Biscayne Blvd., Miami, FL 33131, joletsky@kpkb.com.

    /s/Christopher Gilbert
**MARTIN B. UNGER, ESQ.**
Florida Bar No. 235032
munger@ungerlawgroup.com
**CHRISTOPHER GILBERT, ESQ.**
Florida Bar No. 0159050
cgilbert@ungerlawgroup.com
**The Unger Law Group, P.L.**
701 Peachtree Road (32804)
Post Office Box 4909
Orlando, Florida 32802-4909
Telephone: (407) 425-6880
Facsimile: (407) 425-0595
Attorney for Defendant